All right, we'll give them just a moment. While they're leaving, we'll have the next case, 17-51023, JCB v. Horsburgh, come forward. All right, Mr. Goldwasser, when you're ready. May it please the court, my name is Richard Goldwasser, and I represent the appellant Convane and Power Transmissions Solutions. The issue before the court today is one of first impressions, certainly for an appellate court. And that issue is, is a principal who can only timely pay commissions subject to the Act's treble damages and attorney's fee provisions. And I would submit that the answer is yes. Okay, so let me ask you a couple things, because, you know, when you're doing statutory construction in a res nova context, you're looking to see if there's maybe analogous statutes and how they've been construed. And I'm not sure I know of an analogous statute as far as automatic treble damages. DTPA has treble damages, but it's discretionary with the jury making certain findings. Other cases like the Prompt Pay Act and the Texas Insurance are percentages, but they're annual, so, you know, if you delayed a while, it would be more than if you delayed just a short time. This seems kind of hard stop, you're one minute late, treble damages, or the guy can pay up until the last minute and not pay treble damages. It seems like either way it's kind of an extreme situation. So is there an analogous statute? Can we look anywhere for this? I am unaware of any analogous statutes in Texas, Your Honor. States throughout the country, there are about 35 states that do have analogous sales representative statutes, and they are Should we certify this question to the Texas Supreme Court? I don't believe so. I believe the, Your Honor, I believe the answer should be clear from just a plain reading of the text of the statute. It's not clear to me anyway. As I understand the dispute, one side says, so the statutory term I think we're looking at, among others, is whether there was any unpaid commission due. That's correct. One side says there was unpaid commission due, and certainly there was at the time that the suit was filed. The other side says that there is an unpaid commission due because the commission was in fact paid prior to judgment. Aren't you both right? The question is what's the timing of when the statute asks you to make that determination? At one time  I think that's a correct statement. I think it's a correct statement of fact that at one time there were commissions that were unpaid, and I don't think there's any dispute that over the 17-month period, subsequent to termination, all of the commissions have now been paid. But some of them after the lawsuit was filed. Correct. The question is, we have to look to Texas law to try to decide what timing we're supposed to use. Do we look at the state of the world at the time the suit was filed, or the state of the world at some later time? And I guess my question to you in terms of the certification issue is, what is the Texas legal principle that we're supposed to invoke? Because I don't know which one to invoke. The principle that I would ask the Court to invoke is just a reading of the statute in terms of the statutory scheme that has been set up. And the statutory scheme that has been set up is the underlying purpose of the statute is to incentivize principals to timely pay. Mr. Goldwasser, before we leap to the purpose of the statute, I mean, I take the simple-minded view that the best way to figure out the purpose of the statute is to read it, right? So let's read it. I happen to have it here in front of me. So as Judge Ho said, the key phrase here that we're trying to figure out what it means is the unpaid commission due in 54.004.1. Do you agree with that? I do agree. The unpaid commission due. So I'm looking at the whole statute. It seems to me the district court just myopically focused on the word unpaid and said, well, they were paid at some point, so no longer unpaid. That doesn't make any sense to me. So the prefatory paragraph in that statute refers to two other sections of the TSRA, right? Section 54.002 and section 54.003, right? And would you agree with me that 54.003 is not applicable in this case? It doesn't apply to the payment of sales rep. There was a written contract. Correct, because it was written. Correct. But I do think it does shed light on the entire statutory scheme. Agree with you. But just go with me here. So section 54.002 is a relevant trigger section here. It says a principal who fails to comply with the provision of a contract under 54.002 relating to a payment of a commission, right? And the allegation here is that, well, there's a failure with respect to 54.002. Am I right so far? Correct. Okay. So if we go to 54.002 and look at what it says, it's a requirements for contracts, right? So one of the requirements for this kind of contract, one of the requirements is that the contract be in writing. We don't have to worry about that, right? It's in writing. It's in writing. Okay. The second one is the one I'm concerned about. The contract must state the method by which the sales representative's commission is to be computed and paid, right? Now, the allegation here is that the payment of the commissions didn't comply with that part of the contract. Am I right? That's correct. Okay. Well, not necessarily the method by which it is to be computed and paid. And paid. And paid. That's the — that's where it runs afoul. Now, what was the method by which the commission should be computed and paid under the contract? The contract, there was a very sliding scale of commissions between 2 and 5 percent, and the commissions were to have been paid on the tenth day of the month following receipt of the purchase payment from the client. So why shouldn't — okay. You're tracking with me, at least. So why shouldn't I interpret the phrase the unpaid commission due in 54.04 by reference to when the commission was due in the contract? That's how I believe the statute does read, and I would agree with that interpretation. That takes care of the time element. What does the record show — if that's the way to read the statute — maybe it's not, maybe that's just me. If that's the way to read the statute, what does the record show about which commissions were unpaid when due? Does the record, like, solve that? I've seen schedules of checks and whatnot. Right. We did not — for purposes of summary judgment, we did not match up each specific order with each specific payment. What I can say is there's no dispute that the commissions were paid late. The defendant in this case, the appellee, included a 5 percent commission on all of the commissions that it eventually paid over the seven months. 5 percent interest? 5 percent interest. You said commission. 5 percent interest. I appreciate the correction. So in their mind, it was certainly late. 5 percent flat or 5 percent per annum? I believe it was 5 percent annual interest. Okay. So if it was six months late, then it was two and a half percent. Two and a half percent. All right. And there were also some outstanding damages issues that the district court never got to. Because the district court just said, as I understand it, well, the other side paid at some point. Therefore, the commissions were not unpaid. Right? So no damages. No trouble damages. No trouble damages and no attorney's fees. And no attorney's fees. No attorney's fees. But there are some outstanding issues. Let's say we reverse that, send it back and say, no, you got the statute wrong. Redo it. There are some — I think there are some outstanding issues, are there not, with respect to the quantum of damages? Wholesale — you know, whether they were done in Texas. Absolutely. There are some further defenses that the appellee raised below that the district court did not address. Correct. Would you read the — go back to the statutory interpretation discussion for a moment. This appears to be a strict liability statute. In other words, once you violated it, there's no good-faith excuse. You're just liable for trouble. That's true. Does that sound right? Okay. So if I understand your reading of the statute, the following fact pattern could result in trouble damages, I think. Payment is due on day one. The payor, for whatever reason, is tardy by two days. So they pay on day three. On day two, there's a rush to the courthouse, because who wouldn't want three times the commission due? Do I understand that correctly, that under your theory, that would be trouble damages? That would be trouble damages, Your Honor. But your theory is even without the rush to the courthouse on day three, there would be trouble damages. That's correct. The payment is due when the payment is due. And if they're five minutes late or five years late, same trouble. It's trouble damages. Did you all send a Chapter 38 demand letter? I mean, would that be a basis for attorney's fees? We sent the demand letter not under Texas law, but we did send a demand letter. Did they pay the full amount within 30 days? No. So why didn't you get attorney's fees under Chapter 38? We did not pursue a Chapter 38 fee claim. Because, again, I'm trying to figure out how this statute intersects with other statutes. And so attorney's fees are already available for breach of contract. Failing to pay commissions when due is a breach of contract. However, you have to send the demand letter and payment for the just amount owed must not be tendered within 30 days to get attorney's fees. But then you otherwise can collect attorney's fees. So the trouble damages, and then you can get interest, obviously, pre-judgment, post-judgment. And, of course, the contract itself could provide for interest. And then you would get either contractual interest or statutory interest. So what seems to be the focus to me is this treble damage. And the problem that I'm seeing is you would have an extreme either way. Either of y'all's construction of the statute leads to Judge Ho's example of, you know, you're two days late, but now you owe three times what could be hundreds of thousands of dollars in commissions. But their argument essentially allows you to write the check, you know, the day before the trial or something, and avoid it. And both of those seem a little bit out of hand. So doesn't that sound like something we ought to certify to the Texas Supreme Court when both readings, both sides' readings of the statute lead to potentially absurd results? Well, I think when you look at the, going back to the intent of the legislature, it's to incentivize prompt payment on behalf of the, or incentivize the principal to make prompt payment. No, we have a prompt payment act in insurance that's exactly for that. And it's an 18 percent penalty on top of interest and on top of damages and on top of everything else. But that recognizes that an insurance company could be late, but not way late. And so it incentivizes the insurance company to go ahead and pay that as promptly as possible because of the 18 percent per annum penalty. Whereas here, once you've missed it by a day, you may as well hang out for the next several years and hope for the best because it's going to be the same either way. Or you could be subject to other defenses, latches, if you just sat around and waited. If you sat around for, I suppose, a long enough period of time. But in our case, we're proceeding. No, but I'm talking about the payer's incentive. If the idea is to incentivize the horsebergs of the world to pay, under your analysis, once they're a day late, they have no incentive to pay. They may as well just wait, invest the money, and hope that you missed the statute of limitations, hope that you missed latches, whatever the right analysis is. And then they'll never owe it. And if you do sue them, they'll owe the same except for maybe a little bit of interest. And attorney's fees. So they will, but by paying in accordance with the statute at that point, they will avoid paying. Well, I mean, they still owe attorney's fees. It's just how much, I guess. Correct. So if they're a day late or they're 500 days late, they still owe attorney's fees. It's just maybe there would be fewer attorney's fees if you didn't pay them quickly. I certainly understand the Court's concern about the extreme nature of this. But I think that argument, I think, is better left addressed to the Texas State legislature. So when the legislature, didn't they change this law in when, 2007? Or when was it? I believe it was in 2007. Maybe. I could be wrong. But they changed it. It used to say damages. Three times damages. And they changed it. Correct me if I'm wrong. Did they change it to put in the phrase the unpaid commission due? They did. That's correct. So they went from a damages framework to referencing unpaid commissions due, which aligns with the position that we're taking is that these are unpaid commissions. Any indication of what, again, I hate to flip out to legislative purpose, but why not? Any idea of what the Texas legislature was thinking? What were they trying to accomplish? There's no text that I can refer to. I think it follows the argument that there are no economic damages at that point. So it makes more sense to refer to the unpaid commission. There's no representative in a committee somewhere saying, well, we're really concerned about the sales reps getting screwed. So let's have trouble damages. And if they're a day late, let's. Originally there was. Originally there was. And originally what they specifically said. It was originally. Sorry. There was what? Originally this is back in 1995. Your honor. The committee report stated submitted with the report is without a damage provision. Most sales representatives cannot justify the time and expense of filing suits to collect delinquent commissions. Or if they do, the suit is likely to be settled out of court at a substantial discount with the possibility of trouble damages. More principals will pay commissions rather than face a substantial penalty. And in reference to the, the idea that it will likely be settled out of court at a substantial discount. That is actually what was offered to our client by Horsberg. They had actually at a, at a certain point in, I believe it was in May 2016 offered us a discount. They said, look, we could pay you over six months on an accelerated basis if you'll accept 75% of what we owe you. So the fact pattern here really underlies that the entire legislative intent of incentivizing principals to, to make payment. Okay. Thank you. Mr. Weber deserved. Good morning and may it please the court, Tyler Talbert on behalf of the Horsberg and Scott company, the appellee in this case, as your judges, as the judges noted, this is an appeal over commissions that have been fully repaid with interest. And there are three relevant facts that guide this court through that analysis. One, Horsberg has repaid all commissions in full. But late. You admit at least some of it's late. I would, I would. Some of it after suit filed, some of it before. That's correct. But a bunch of it late. We don't dispute that. Does the record reflect how much of it was late by the terms of the contract that required you to pay on the 10th day of the month, following the payment for the blah, blah, blah. The record does not reflect which ones particularly were late. And as Mr. Goldwasser noted, they didn't distinguish between those that were and were not late. I think it's fair to accept the record in Judge Pittman where he says they were paid late. Horsberg violated the contract. Well, let's do hypothetical, not this case. Let's say you all had not paid until the eve of trial. Under your theory, trouble damages? Well, and this is the slip. Do not. There would be, there would be trouble damages available to the sales rep at trial. Absolutely. And this is the slippery slope that you've heard from CPTS. Why would there be trouble damages available to the sales rep? At trial is what I'm saying. On the eve of trial. Full payment on the eve, in other words, day before trial. Right. Y'all pay in full, everything that's owed, not counting trouble. Can they still proceed to trial and get the trouble? Where the sales representative chooses to receive all payments and be made whole, no. Then they would not be entitled to trouble damages. So that gets to my concern about what rule we're supposed to pick, because either rule results in gamesmanship. And that's fine. The legislature is allowed to pass a statute that allows for gamesmanship. That is their right, unless it's inconsistent with the Constitution. My problem is I don't see what in the text tells me what the timing is. And I've asked opposing counsel, I want to ask you now, is there some Texas legal principle, some case, some canon of construction that I'm supposed to use to fill in the gaps? And if not, why not certify this question to the Texas Supreme Court? Certainly. And as this Court noted, y'all are considering two competing extremes, right? As Judge Haines, you noted, maybe both of them lead to absurd results. As far as answering your question, what is the guiding principle here, I would submit first and foremost it is the statute. What did the Texas legislature choose to do with the statute? Okay. I agree with you completely. The phrase is the unpaid commission do. Is that right? That's what we're, right. The district court said the moment, so, well, forget the district court. The unpaid commission do, there are two triggers in that statute in the prefatory paragraph. So one trigger is a principal who fails to pay commission is required by 54.03. Do you agree that's not relevant? I agree with you. The first one is a principal who fails to comply with the provision of contract under 54.02. Do you agree that one's relevant? Okay. So we go flip over to 54.02. It requires contracts of this nature to be in writing. No problem here with that one. The second one is it requires contracts to state the method by which the sales representative's commission is to be computed and paid. And the allegation in this case is that your client didn't pay the commissions when the contract required them to. That's absolutely correct. So why doesn't that provide the timing element for when, for the unpaid commission do under number one? And when we focus in on the language unpaid commissions do, the Texas Supreme Court has been very clear that courts must presume that specific language that was included was included for a specific purpose. Okay. And conversely, language that was excluded was omitted for a specific purpose. And so what you've heard from CPTS is a reading in which they can obtain unpaid commissions do or late paid commissions or untimely paid commissions or commissions that were at one point. What you're hearing from me is according to the contract, if you didn't pay a commission on the 10th day of the following month that you received the payment from the customer. Right? So day 11. Well, it says approximately 10 days. So 15, 15th day, you don't pay the commission. Why isn't the commission at that point an unpaid commission do the representative? At that point, it is an unpaid commission. Okay. Then, boom, trouble damages. Well, and I want to focus in on some language here within 54.004. Okay. It notes here. And let's look at those two or three words immediately preceding the damages available. Shall be liable to a sales representative in a civil action for. And so this isn't just some procedural quirk that we need to go to trial. I would submit. That just describes how the representative is supposed to collect. Well. As opposed to knocking on your door or. I would submit the opposite. I would submit the opposite, Your Honor. And Texas case law admittedly is not rife with cases on this point. But I want to point to one case in particular, the Asphalt v. Tenzer case. In which the court noted that the sales representative had to go to trial. Had to prove its damages. Had to show which one were wholesale. Which one were solicited in Texas. And on that damage amount, that was the amount that gets troubled. And that's not just a procedural issue or a ticky-tacky issue. It resonates with Texas case law more broadly. Specifically, Texas is very clear that in the absence of actual damages, there can be no trouble. But the statute was changed from damages to unpaid commission due, was it not? It did go over 12 years, from 1995 to 2007, from damages sustained to unpaid commissions. Okay. What's in your view, did that change in the text have any impact on the statute? Or did it just say the same thing? I would submit that it does have an impact on the statute. And first, as you noted, Judge Duncan, we don't even get to the legislative history unless we find absurd results or ambiguities. And I accept that. I would submit that there is a clear intent by the legislature to limit what damages are recoverable and when. And specifically, you asked about the history of this. In 1995, we see a change that went from damages sustained to unpaid commissions sustained. And then in 2007, we saw it go to unpaid commissions due. Now, I would submit that under that 1995 reading, unpaid commissions sustained, there's no requirement that they be due and outstanding and still owed. If they were ever simply sustained, then they could be subject to trebling. However, in 2000 — I wonder how that works, though, because even under the damages sustained model, I don't see why a person in your situation couldn't say, I've paid you. I paid you a few days later, but you no longer are damaged. You've been made whole. Well, and that is what I'm — Therefore, no treble. Well, that's what I'm submitting, is that this reading actually incentivizes settlement and it encourages the Horsbergs of the world, the principals, to come and say, we were late. We want to pay you more. It encourages you to wait until the eve of trial and then pay. And again, I would just — Because then, unless they've done the Chapter 38 letter, they don't get attorney's fees either. Well, and again, I would — Just get what they were owed three, four, five years ago and a bunch of depositions and other stuff. And you expressed you were concerned that either reading may lead to absurd results, in particular this day-before-trial scenario. I would submit that that's not a real concern for one simple reason. On the day of trial, the day before trial, the sales rep has the option to say, no, I've ventured this far. I want to try my luck under the TSRA and go for treble damages and attorney's fees. Well, you would argue that they've already been paid. Not if they chose not to accept the payments. That's what I'm submitting, is that here — You've got to get up and tell the jury we gave them the money they wanted and they refused it. Gee, well, I guess we don't owe anything. That's what you're going to do in that situation. So that's not viable. I mean, particularly if you've got sales guys that are facing potential appeal, whatever, whatever, you're saying they can't accept the money that they are already owed without giving up a right the statute gives them. That doesn't — that's not in the statute. Okay? And what I submit to the Court is under the statute, the sales representative has an option. They always have the power. They can, as CPTS here, choose to receive all payments owed with interest and be made whole. Well, they wanted to choose to receive them when they were due, and that didn't happen. So now they're taking the crumbs as opposed to starving forever. Well, ultimately — And you're going to say that's what the statute wants. Ultimately, what — Either starve or eat crumbs or shut up. That's the choice. The statute's supposed to be benefiting the sales reps is being written to do. What CPTS chose to do was to accept full repayment of commissions with interest and then attempt to get treble damages, too. The functional equivalent of — It wasn't an and-then. It was the middle of the case. I mean, they'd already filed suit. They already hired a lawyer. They already incurred some attorney's fees that they now want back, et cetera. I mean, all that had happened. And, again, I want to step back for a minute from this scenario of the day before trial. Let's look at what actually happened here. The day — I'm sorry, the month after, May of 2015, Horsburgh began making regular, sizable, consistent payments, anywhere from $10,000 to $35,000. Let's just stipulate to good faith the issue is not this case. To be honest, the issue is a statutory interpretation question. It seems to me, and I'm at the risk of repeating myself, the legislature had a choice. It could have said unpaid commission due at the time of breach, or unpaid commission due at time of suit, or unpaid commission due at time of trial, or unpaid commission due at time of judgment, or some other. It seems, for whatever reason, the legislature didn't choose any of those. It didn't tell us. So I'm left with that, and I've asked both counsel, is there a gap-filling principle of Texas law that should answer this question? And I don't think I've heard an answer from either of you. Why not just certify? It sounds like you guys are both opposed to certifying the question, and I'm not sure why. I'm guessing this is an important statute. Does this come up with some frequency? This particular issue, as opposing counsel noted, has not been squarely addressed by a Texas state. Right, but is this statute important to anybody other than this? Certainly. Would you rather have a ruling that is binding precedent or a ruling that isn't binding precedent in Texas courts? I think in this case, obviously, whatever this Court decided would be dispositive to these parties here. But to answer your question. You get my point. Why not just say future litigants heartache and get you all a definitive ruling? And this Court certainly has that option available to it. I would submit that because this is a statutory construction case, because we have case law from the Northern District of Texas specifically on this point, that it would not be a bridge too far to simply construe the statute by its plain language. That's exactly when you certify, when there's a statutory construction that could lead to I mean, it would be a pretty major thing either way, because it pretty much just blows away the statute if the night before trial you can just pay the fee and that's the end of it. If, in fact, it's the day late, you're now going to be $3 short, I bet these sales reps are going to get paid a lot more commissions a lot more timely if that is a Texas Supreme Court published opinion. So I do think it would have impact. And that's exactly when you're having those kinds of impacts on state law that you would prefer to certify. Not to say we're not capable jurisdictionally and all of that of doing that, but we are still making an eerie guess. We make a lot of eerie guesses and we think we're pretty good at it, but maybe this is one of those ones. And this Court certainly has that discretion and I would defer to the Court's judgment on that. I know why you all don't want it. It's because it's more time and effort because you're going to go to the Texas Supreme Court and all of that. But then you get a Texas Supreme Court argument. Well, as fun as it would be to have that argument. If they accept it. They may not accept it. Austin is lovely this time of year. It is. I wanted to address your concerns specifically, Judge Ho. What's the guiding principle? And, again, I know I noted it earlier, but it's that it is clear in Texas law there is no trebling in the absence of actual damages. So let's take this. Not what the statute says. The statute does not. You're correct, Your Honor. But Texas law more broadly, and specifically in our brief, I think we noted Household Financial Court 3. Why does it matter, Texas law more broadly? Why not just talk about this text? Well, I'd submit that Texas law more broadly should inform this Court's opinion. In fact, construing the DTPA and other statutes, Texas courts have found that it's axiomatic that in the absence of actual damages there can be no trebling. Yes, but you see, the problem with that is in DTPA law, treble damages is a matter of discretion in the jury, and it is treble actual damages, okay? Certainly. And I think there's a limit on economic and whatever, you know, this and that. So here, that's the question, right, is when are we calculating? We know there's an actual amount that was owed and unpaid. It's a matter of when. And there isn't any discretion in the jury to say, well, you knowingly committed this and you were really evil or you weren't the three times and this and that. So the problem in the DTPA cases is somebody made a misrepresentation that would violate 17.40-something of the Texas Business and Commerce Code. I used to know all this by heart, but I don't live it as much anymore. But nothing happened. There were no harm. Then we're not going to just randomly assess treble damages because it's treble nothing. So somebody lied but didn't cause any harm. It's kind of the end of the matter. But here we know there was a period of time. Money was owed, not paid. That's what the statute's about. And so why wouldn't we, if we have two absurd results, why wouldn't we go with the absurd result that at least furthers the purpose of the statute, which is getting sales reps paid promptly? Well, I would submit that our reading does not lead to an absurd result. It puts the power ultimately in the hands of the sales rep to do what CPT. But you're acting as if money is sort of optional. In my experience, most businesses are running on fairly thin margins. They need cash. And so you're saying they have to basically gamble in order to get what the statute gives them. If you paid at the last minute, then they have to reject that and then continue to wait however long the appellate process, maybe the jury trial falls apart because the judge has to do something else and whatever, whatever. And so all of this forever and ever and ever at a fairly low interest rate. Meantime, they're trying to run a business. They need the money. That's why they're doing work, so they can get money for their business so they can live and they can pay their salaries and they can do all the rent. All those people aren't waiting, the electric company, the landlord, the employees. None of them are waiting. They want their money now. So how can it be that a statute that is geared towards getting sales reps paid promptly would require them to reject payment? And what I'm submitting to the Court is that the sales rep has two options. They are free to choose either of those options. They can accept the payments in full with interest and pay the bills, keep the lights under that, or they can try their luck under the TSRA. They cannot, I submit, have it both ways. They can't choose to be made whole and then choose to wager three times more. I mean, let's say they accepted all the unpaid commissions that were not paid when the contract required them to and then they went to trial and they got the travel damages. Wouldn't they be reduced by the amount of money that they received? Certainly, the amount of actual. So they'd get two. They'd get two times. They wouldn't get three times. Well, to the extent that there were actual damages owed at the time of trial, that amount would be trialed. No, the statute doesn't say that. The statute doesn't say actual damages owed at the time of trial. You're correct, Your Honor. It states unpaid commissions due. And I would submit that where they've been repaid, they're neither unpaid nor due. So is the allegation that your client failed to comply with a provision of a contract under 54.002, is that the allegation in this case? That is the allegation. And you, in fact, admit that that happened. The trial court found it, and we don't dispute that. That's what happens. Okay. But to your point, and I think Judge Ho noted, we have a statute that says unpaid commissions due,  or it could be troubled the day of filing. What the legislature said was unpaid commissions due. They didn't say late paid commissions or commissions that were at one time due but are now repaid. They made a choice here, and that's what this court— But you always have to say when. Yeah, they made a choice. Unpaid commissions due when? I just—honestly, I'm sorry. I don't believe they passed this whole statute just so that you pay on the eve of trial. I really don't. People pay on the eve of trial enough without a statute like this. That isn't what it's for. So I'm just still struggling with how your version of the world makes sense, this rejecting payment that you're owed world. Sure, and I've— What analogy is there? I mean, what statute can you point to where that's the rubric? For example— To reject money that you're owed. Well, if I'm understanding the question, and correct me if I'm not, that a plaintiff is always at liberty to accept essentially settlement for their claims or to go forward. This isn't a settlement. I understand that. If we get down and we go to a mediation, we sign that this is it, and I'm going to hold all of you and your family forever, this and that, until death do us part, I get all that. But that's not what this was. If I just receive a—I'm owed $10,000 and I receive a check for $5,000, and it doesn't say this is in full and fair consideration and whatever, and I cash it, that doesn't suddenly mean I'm not owed the other $5,000. Well, certainly— That's your theory, though. Well, our theory is that we were doing the best we could, and as Judge Hogue noted, this isn't necessarily a question of good faith, but we were that same business, trying to keep the lights on, trying to pay bills. How is it supposed to work? They were your sales rep, right? They were selling stuff. Right. Okay, and then they'd sell stuff for your behalf, and you would get a payment. Sometime between 60 and 90 days. Okay, but when you got the payment, you bargained in the contract that in the following month, on the 10th or approximately of that month, you owed them what, their commission, which was what? Variable percentage. Variable percentage. And you all bargained for that. You bargained for the timing, and you weren't paying them out of the goodness of your heart. You were paying them because they did work for you, and the money came in, in your pocket, and you owed them what? What was the general percentage? Anywhere from 2 to 5 percent. 2 to 5 percent. And you admit that you didn't pay them. That's correct, and in light of that record, what Horsburgh did was it repaid all of those amounts. It repaid all of those amounts with interest. I mean, it basically decided it was going to just make them an unwilling lender. Because, really, when you got $100 that you owed a 2 percent commission on, you should have viewed it, your business should have viewed it as a $98 receipt. Instead, they viewed it as $100, and we'll pay these guys when we have it. And is that what the statute contemplates, honestly? What the statute contemplates is that where there are unpaid commissions due, that being a sales rep is owed money that's due, that they can't obtain treble damages. Where there are no unpaid commissions due, that there is no trebling. That's what Judge Lynn of the Northern District decided in the 2007 case. That's what Judge Pittman decided here. I would submit to this Court that that is the correct result. It does have the authority and the discretion to decide it. And that between these two options, this one is a faithful statutory interpretation and is fair. Thank you. Can you offer us anything that doesn't lead to one or the other absurd results? Maybe you could talk about, just to follow that question, and I'll ask it along with it. Why is the result that you're advocating absurd? I think that's the point. I think the point is that the money comes in, as Judge Hayden said, it is within the control of the principal to pay it. It's like an attorney. An attorney takes fees into his client fund account. You can't then spend your client's money and then subsequently repay it and say no harm, no foul at 5% interest. There's a penalty. This statute imposes a penalty of treble damages. But isn't it a little bit absurd that it's the same penalty for one day late and ten years late? The analogy there I'd make is with the statute of limitations. If you're a day late, you're gone. And, you know, some plaintiffs lose very significant claims based upon the statute of limitations a day late of filing. Notices of appeal, you miss a date of a notice of appeal and your appeal is gone. So the law does impose deadlines and there are harsh consequences that follow from failing to comply with the deadline. And in this case, under the Texas Appellate Court in Metro Marketing Services v. HTT Headware, states that the statutory framework strongly suggests a legislative intent to provide protection to the sales representative, not in affirmative defense to the principal. What do we do with the fact that here the agreement is on approximately the 10th of each month? So if you were on the 11th, would that be approximately the 10th? Well, in this case, that's a mitigating circumstance to assuage the harshness of a result. If the payment comes in on the 11th or the 12th or the 13th or maybe the 15th, then there could be a question as to whether or not. Is that arguably the purpose of this, to sort of avoid the harshness of this statute? Because, I mean, you all signed this in 2013. The statute had been in existence, you know, some 20 years at least. And so is it arguable that the parties contemplated that, you know, we don't want to just make it a day or two as the problem. We want it to be, you know, you got a day or two basically to get it done, approximately the 10th. But approximately the 10th wouldn't be three months later. Correct. I think specifically with respect to our case, that does avoid the harshness of the result that. . . So, I mean, is that relevant? Construing the contract, is that relevant to the. . . It doesn't change a statute, I understand, but does it change our analysis of the arguments being made by Horsberg? I think it does because what we're not talking. . . We're not talking about a day late here. We're not talking about five minutes late. And we're not talking about $5 or $10. We're talking about payments that were up to 17 months late, totaling about $280,000. And I'd like to. . . because they had other bills. I mean, they rather pay the light bill than you. That's correct. And, in fact, their director of risk management testified to that fact at his deposition, that they paid all sorts of expenses rather than paying us the money that were due us. Far from being an absurd result in this case. This case sounds exactly like why you would want to have a law like this. It's to punish bad conduct. I recognize there's no malice requirement in the statute, but the obvious purpose of this is to punish conduct in people who are in an unequal power relationship with respect to money. Any trouble? That's what the sales rep statute does here in Texas, and that's what it does throughout the 34 or 35 other states in the country that have enacted sales reps. No, I did case law from these other states. We have not. We have not. So is that because it doesn't exist or because it's not helpful? It's because it's not helpful. To either side? To either side. That's a kind of exciting time when case law just doesn't help anyone. Wow. Okay. There was nothing closely analogous to. . . There was no case that I. . . There wasn't a case that had these facts. That said, well, a late payment is not subject to the trouble damages or a late payment is subject. Okay. If there was, I certainly would have called it to the court's attention. I just want to, in the brief time I have left, remark on the how much was late. At page 8 of the Apley's brief, they state, in addition to the principal balance of commissions owed, H&S paid CPTS 5% interest on each and every commission it paid late. Well, each and every commission that they paid us had 5%. They are admitting that all $280,000 was paid late, and that's in their brief. Well, in any event, that could be a question on remand. That could be a fact question. Yes. So I conclude by asking that this Court reverse the history court judge and remand for further proceedings. Thank you. Okay. Thank you. All right. At this point. . .